BOWDITCH MUTUAL FIRE INSURANCE COMPANY *vs.* ISAAC WINSLOW & others.

An application to a mutual fire insurance company for insurance on buildings contained the following question and answer: " State whether or not incumbered, to whom, and to what amount: " " Mortgaged for $2,000 on the buildings, land, &c.—value $7,000; " and concluded with an agreement of the applicant " that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk; and in case of insurance he holds himself bound by the act of incorporation and by-laws of the company." The policy was also made subject to the provisions and conditions of the by-laws; and one of the by-laws provided that the policy should be void, unless the true title of the assured should be expressed in the application. The policy also expressed the intention of the company to rely on their lien on the interest of the insured in the buildings and the land under the same. At the time of the application, the land on which these buildings stood, and a larger piece of land, owned by the same person, but separated by a court laid out between them by the owner, were both subject to a mortgage for $2,000 to J. S., and to another mortgage for $800 to another party; and the value of the first piece of land and buildings was $7,000. The assured afterwards indorsed upon the policy an assignment reciting his "having mortgaged the property within mentioned to J. S." and assigning the policy to him as collateral security; and the company assented in writing to this assignment. *Held,* that the failure to disclose the mortgage for $800, in the original application, avoided the policy in the hands of the assignee.

WRIT OF REVIEW. The original action was assumpsit upon a policy of insurance, dated June 16th 1847, by which the plaintiffs in review insured Joseph Morrill $1,600 upon his soap and candle shop, fixtures, stock and tools, in Roxbury, " subject to

the provisions and conditions of the charter and by-laws of said corporation, and the lien on the interest of the person insured in any building covered by this policy, and the land under the same," which lien the company expressed in the policy their intention to rely on, to secure the payment of assessments.

Indorsed upon the policy was the following assignment: " Having mortgaged the property, real and personal, within mentioned, to Isaac Winslow & Sons, merchants of Boston, I hereby assign to them or their assigns the within policy, to hold as collatera. security for the performance of the condition of said mortgage Dated at Boston, July 16th 1847. Joseph Morrill.

" The directors consent. John T. Burnham, Secretary."

Among the by-laws were the following : " Art. 9. If the insured shall neglect for the space of ten days, when personally called on, or after notice in writing left at his last and usua. place of abode or business, to pay any assessment, the risk of the company on the policy shall be suspended till the same is paid."

" Art. 11. When any property insured shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors to be cancelled ; but if the grantee or alienee have the policy assigned to him, he may, upon application to the directors, within thirty days next after such alienation, on giving proper security, have the same ratified and continued in force for his benefit, with all the rights, and subject to all the liabilities, to which the original party insured was entitled and subjected : Provided, that such alienation shall not affect the rights of any person to whom the policy shall be payable, or be assigned as collateral security, if such person shall have assigned a premium note with the assured, or shall give such security as the directors require."

" Art. 17. Any policy issued by this company shall be void, unless the true title of the assured be expressed in the proposal or application for insurance."

" Art. 19. The applicant for insurance shall make a true representation of the property on which he requests insurance, so

far as concerns the risk and value thereof, and of his title and interest therein."

The application (which was made part of the policy) contained, among others, the following question and answer : " State whether or not incumbered, to whom, and to what amount." Answer. " Mortgaged for $2,000 on the buildings, land, &c.— value $7,000." And the application concluded with the following clause : " The said applicant hereby covenants and agrees to and with said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk ; and in case of insurance he holds himself bound by the act of incorporation and by-laws of said company."

The parties submitted the case to the court upon a statement of facts, of which the policy, assignment, charter and by-laws, and application were made parts, and the material part of the residue of which was as follows :

" At the time of the application for insurance, the premises were owned by Joseph Morrill, and were subject to a mortgage to the plaintiffs for $2,000, and also to an earlier mortgage to the Traders' Bank for $800. But both these mortgages covered four lots of land, two on the northwesterly side of High Street Court, containing 3,291½ feet, and two on the opposite side of said court, containing 4,260½ feet, entirely separated by said court from the two lots first mentioned. The buildings insured stood on the first two lots only, and were built after the making of the mortgage to the Traders' Bank, and before the making of the other mortgage ; and the value of said two lots and buildings thereon was $7,000. The four lots have never been conveyed separately, but have always been owned together, and originally constituted one lot, through which High Street Court was laid out by the owner before either of said mortgages was made. The mortgage to the Traders' Bank remained in force till the time of the fire, and under it the bank took possession for the purpose of foreclosure after the making of the policy."

" The directors of the company did not, either at or since the time of assenting to the assignment of the policy to the defendants in review, claim of them any premium note or other security, and the said defendants have never given any such note or security.

" More than ten days before the fire, an assessment was laid, and notice thereof given to Morrill, and he agreed to pay it, if the agent of the company would call upon him on a certain day, which happened to be the day on the night of which the fire occurred. He called accordingly, and did not find Morrill. That night the fire happened. The next morning Morrill paid the assessment. The defendants in review did not know of the assessment, and were never asked to pay it.

" If, on the foregoing facts, a jury would be warranted in finding a verdict for the defendants in review, in this action, brought in their names, judgment is to be rendered for them and the case referred to an assessor to settle the amount of damages ; otherwise, judgment to be entered for the plaintiffs in review, and the former judgment reversed."

*O. P. Lord*, for the plaintiffs in review.

*H. Gray, Jr.* for the defendants in review. I. The assignment of the policy, with the assent of the insurance company, to the Winslows, who had an insurable interest in the property, created a new contract between the insurers and the Winslows, upon their interest in the property. *Fogg* v. *Middlesex Mutual Fire Ins. Co.* 10 Cush. 345, 346. *Foster* v. *Equitable Mutual Fire Ins. Co.* 2 Gray, 219. *Clark* v. *Citizens' Mutual Ins. Co.* Middlesex, 1853. The Winslows may therefore maintain this action in their own names. *Kingsley* v. *New England Mutual Fire Ins. Co.* 8 Cush. 393. *Phillips* v. *Merrimack Mutual Fire Ins. Co.* 10 Cush. 353. After such new contract, the Winslows were the insured, within the meaning of the 9th by-law ; and their rights could not be affected by the subsequent failure of Morrill to pay an assessment, no demand for which had been made on them ; nor by the fact that they never gave a deposit note, inasmuch as no such note was ever required of them by the company. *Clark* v. *Citizens' Mutual Ins. Co.* Middlesex,

4*

1853. *Wilson* v. *Hill*, 3 Met. 69. *Tillou* v. *Kingston Mutual Ins. Co.* 7 Barb. 573, and 1 Seld. 408. *Flanagan* v. *Camden Mutual Ins. Co.* 1 Dutcher, 513. *Durar* v. *Hudson County Mutual Ins. Co.* 4 Zab. 194–199, 203. *New England Mutual Fire Ins. Co.* v. *Butler*, 34 Maine, 454.

II. The failure to disclose the mortgage to the Traders' Bank for $800 was not such a misrepresentation as makes void the contract of insurance with the Winslows; and this on three independent grounds:

(1.) The failure to state the name of the mortgagee, in the answer respecting incumbrances, in the application, cannot now be objected to, after the insurers have accepted that answer, and issued a policy thereon. *Buffum* v. *Bowditch Mutual Fire Ins. Co.* 10 Cush. 543. *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 45. *Gates* v. *Madison County Mutual Ins. Co.* 2 Comst. 47, 48. This was therefore a policy on the interest of the assured, subject to a mortgage of not more than $2,000 to some person other than the assured; for if it was less, the assured cannot complain. *Liscom* v. *Boston Mutual Fire Ins. Co.* 9 Met. 205. The new contract with the Winslows was therefore valid, whatever may have been the validity of the original contract with Morrill.

(2.) It is sufficient if the representations as to incumbrances, in the application, are substantially correct. *Houghton* v. *Manufacturers' Mutual Fire Ins. Co.* 8 Met. 114. *Underhill* v. *Agawam Mutual Fire Ins. Co.* 6 Cush. 440. *Liscom* v. *Boston Mutual Fire Ins. Co.* 9 Met. 205. *Buffum* v. *Bowditch Mutual Fire Ins. Co.* 10 Cush. 540. *Allen* v. *Charlestown Mutual Fire Ins. Co.* 5 Gray, 384. *Clapp* v. *Union Mutual Fire Ins. Co.* 7 Foster, 143. *Dunstable Baptist Society* v. *Hillsborough Mutual Fire Ins. Co.* 19 N. H. 580. And as much of the $2,800 of incumbrances was disclosed as belonged to those two, (out of the four lots mortgaged,) on which the property insured stood. *Brown* v. *Worcester Bank*, 8 Met. 51. Rev. Sts. *c.* 37, § 37. *Stevens* v. *Cooper*, 1 Johns. Ch. 430.

(3.) The application, being expressly made part of the policy, is to be construed as if the two were moulded into one instru-

ment. *Burritt* v. *Saratoga County Mutual Fire Ins. Co.* 5 Hill, 191. Morrill's covenant in the application, as to the truth of the representations, was limited to those "material to the risk." This limits the more general stipulation in the 17th and 19th by-laws annexed to the policy. *Line* v. *Stephenson,* 5 Bing. N. C. 183, and 4 Bing. N. C. 678. The additional mortgage was clearly not material to the risk.

The further covenant that, "in case of insurance, he holds himself bound by the act of incorporation and by-laws of said company," must be construed to mean "in case of valid insurance." *Jackson* v. *Massachusetts Mutual Fire Ins. Co.* 23 Pick. 423. *Clark* v. *New England Mutual Fire Ins. Co.* 6 Cush. 347–353. Clauses introduced for the benefit of the insurers are to be continued most strongly against them. *Palmer* v. *Warren Ins. Co.* 1 Story R. 364. *Wall* v. *Howard Ins. Co.* 14 Barb. 385, 386.

DEWEY, J. Assuming that by force of the assignment to the Winslows by Morrill, with the assent thereto of the plaintiffs in review, the action was properly brought in the name of the Winslows, the further inquiry is as to the sufficiency of the defence to the original action. This is placed upon two grounds, first, the false representation of Morrill, in his application for a policy, as to the extent of the incumbrances upon the property ; secondly, a failure on the part of Morrill to pay an assessment upon his policy, within the time specified in the by-law, whereby the policy was forfeited, and the company discharged from further liability. As to the second ground of defence, it arises upon facts happening after the assignment of the policy to the Winslows, and it is contended on their behalf, that the Winslows are not properly chargeable therefor, the neglect being that of Morrill only, and there not having been any demand upon them for the payment of the assessment. Whether this position can be maintained, we have not found it necessary particularly to consider ; for, whatever may be the rule of law as to the effect of a violation of the by-laws or stipulations in the policy, after the assignment by Morrill, we suppose no doubt can exist as to the right of the insurance company to show that this

policy was defeated by reason of misrepresentations of the as-sured made in his original application for the policy. This assignment transferred the policy of Morrill only. It did not profess to create a new policy. The Winslows assumed no responsibility to the insurance company, gave no new deposit note to the company, nor any guaranty of Morrill's note; in fact, did nothing more than to succeed to Morrill's right and interest in the policy, whatever those might be. The question is, virtually, whether as a policy to Morrill there exists a valid defence to it.

It now appears that there was in the original application of Morrill a material misrepresentation as to the extent of the in-cumbrances upon the property. In answer to the direct inquiries as to whom and to what amount it was mortgaged, it was stated to be mortgaged for two thousand dollars. It was in fact mort-gaged not only for the two thousand dollars, but in a distinct mortgage for the further sum of eight hundred dollars. This false statement as to the incumbrances, in answer to a direct question, under the repeated decisions of this court, and as it seems also to have been held in reference to this particular case, upon the hearing of the petition for review, renders the policy invalid. *Bowditch Mutual Fire Ins. Co.* v. *Winslow*, 3 Gray, 431, and cases cited. It was invalid originally in the hands of Morrill, and equally so in the hands of the party claiming under him.

In answer to this, it is now urged that after the assignment to the Winslows this objection was obviated, as the assignment recites that "having mortgaged the property within mentioned to Isaac Winslow & Sons, I hereby assign to them or their as-signs the within policy, to hold as collateral security for the per-formance of the condition of said mortgage." It is true that after this transfer to the Winslows, the policy was held by the persons who were the mortgagees in the two thousand dollar mortgage. Except as to those authorized to receive the avails of this policy in case of loss, there was no other outstanding mortgage than the eight hundred dollar mortgage to the Traders' Bank. But we do not see how this changes the aspect of the case, or re-moves the objection. The recital as to the mortgage to the Wins-

lows was only a restatement of what had been stated in the original application, and the assignment of the policy did not discharge that incumbrance or lessen the whole amount of incumbrances on the property insured. As already remarked, the Winslows did not by this indorsement take a new policy as mortgagees, but a transfer of Morrill's interest in the policy he had obtained.

It is further urged that the falsity of the representations of Morrill ought not to affect the policy, unless material to the risk, and that the value of the property insured was so large, that the omission of the eight hundred dollar mortgage was not material to the risk. But this is no sufficient answer, as the party applying for the policy was bound, in answering the interrogatories, to answer truly; and having made a false statement in this respect, he has thereby rendered the policy of no effect. This seems to us to have been distinctly ruled in the former decision of the court in this case. 3 Gray, 432. We see nothing in the present aspect of this case to lead us to change the opinion there expressed; and the result is therefore that the original action against the company cannot be maintained, and there must be

*Judgment for the plaintiffs in review.*

SARAH E. SHAW *vs.* BOSTON & WORCESTER RAILROAD COR-
PORATION.

In an action brought by a wife, after the death of her husband, against a railroad corporation, for injuries occasioned to her by their locomotive engine, while travelling in the highway with her husband in a vehicle driven by her, his declarations, made in her absence, as to the cause and circumstances of the accident, and his previous knowledge of the disposition of the horse, and his statements showing that knowledge, are inadmissible in evidence for the defendants.

In an action against a railroad corporation for injuries occasioned by their locomotive engine to a traveller in the highway at a place where the county commissioners had authorized the corporation, upon certain conditions, to cross upon a level, the record of the county commissioners, stating that in their opinion no flagman at the crossing was necessary, is not competent evidence of due care on the part of the corporation.

Shaw *v.* Boston and Worcester Railroad Corporation.

In an action against a railroad corporation for injuries sustained by collision with their loco motive engine at a railroad crossing, the plaintiff contended that the defendants had been guilty of negligence in omitting to have a flagman there to give notice of the approach of the train; the jury were instructed " that it was the duty of the plaintiff to satisfy the jury that this was a necessary, reasonable and proper precaution, in the exercise of ordi nary care on their part, at the place, time and under the circumstances proved at the time of the accident; and that, although the defendants had complied with all the requirements of the statutes, this would not exempt them from liability, if they had omitted other pre- cautions, which, in the exercise of due and ordinary care, they were bound to take, at the time, place and under the circumstances of the accident, the omission of which proper precautions was the efficient cause of the injury to the plaintiff." *Held,* that the omission of the judge to distinguish between circumstances which could be reasonably anticipated, and those in their nature extraordinary, but which would make unusual pre- cautions proper, if they could have been foreseen, entitled the defendants to a new trial.

In an action against a railroad corporation for a personal injury, an averment in the decla- ration, that the plaintiff was struck by their locomotive engine while travelling in the highway, is not sustained by proof that, by means of the defendants' negligence in the management of their train, the plaintiff's horse was frightened, and ran or was driven out of the highway, five or six rods before reaching the railroad crossing, upon land owned by the defendants, and the plaintiff was there struck, while attempting to cross the railroad. And the declaration cannot be amended after verdict, so as to cure this variance. .

The degree and measure of care due from a railroad corporation and from a traveller in the highway, at a railroad crossing, are precisely the same; being those which men of ordinary sense, prudence and capacity would take under like circumstances in the con- duct and management of their respective vehicles.

In an action by a traveller in the highway against a railroad corporation, for injuries sus- tained by collision with their locomotive engine at a railroad crossing, the presiding judge instructed the jury, " that the plaintiff was bound to use ordinary care in. the con- duct and management of his vehicle in the highway, and in the approach to and passage of the crossing; and the defendants were bound to use reasonable care in the conduct and management of their engines and trains, the manner and extent of which would be such care in the management of their engines and trains as would be sufficient to enable a traveller upon the highway, who used ordinary care, there to pass over the crossing in safety." *Held,* that these instructions were objectionable, as implying that proof of due care on the part of the plaintiff would of itself show that the defendants were in fault.

In an action by a woman against a railroad corporation for personal injuries occasioned to her by their locomotive engine, the death of the plaintiff's husband by the same acci- dent, or the fact that she has dependent children, is not admissible in evidence to increase the damages.

In an action for damages against a railroad corporation by a woman who, by being struck by their locomotive engine, had lost one arm and the use of the other, and been other- wise much bruised and injured, so as greatly to impair her health and memory, and put her in constant pain, the plaintiff, at different trials, obtained three verdicts, of $15,000, $18,000 and $22,250, respectively, the two first of which were set aside for errors in the instructions of the presiding judge. The court refused to set aside the third verdict on the ground that the damages were excessive.

ACTION OF TORT for injuries sustained by the plaintiff, by rea- son of being struck by the defendant's locomotive engine. Writ

dated July 29th 1852. *Ad damnum*, twenty five thousand dollars.

The plaintiff's declaration alleged that the defendants were a corporation, owning a railroad with branches extending into different towns upon its line, one of which extended through Newton to Needham, and was known as the Newton Lower Falls Branch; that they owned and ran at stated times a train or trains of cars over their principal road and said branch; " that on the 27th day of January A. D. 1852, as she, with her husband, the late George W. Shaw, and one other person, in a sleigh drawn by a horse, were travelling, with due care and foresight, over the turnpike road or highway, in said Needham, across which the said branch of railroad is constructed, and as they were crossing the track of said railroad branch, in said Needham, a train of cars, drawn by a steam engine at great speed, belonging to and run by the defendants, ran into and over the vehicle in which said plaintiff was riding; and threw, with great violence, producing a severe concussion, herself and her husband aforesaid upon the track of said railroad; and ran over them, and broke their limbs, causing the death of her said husband within a few hours thereafterwards, and breaking the arms of the plaintiff, and bruising her body and limbs; by reason of which serious injuries the plaintiff has lost the whole of her left arm, a part of her right hand, and the use of her right arm, and has sustained other great and permanent bodily injuries, and has suffered great distress of body and mind to the present time, and has been at great expense in consequence of the same. And the plaintiff says, the defendant corporation were guilty of great negligence and carelessness; and that in consequence of said negligence and carelessness she, the said plaintiff, and her said husband were run over and injured as aforesaid. And the plaintiff further says, that the said corporation gave no proper and legal notice of approach and passing of their said train of cars across the said highway, at the time of said injuries; nor did they give any legal or proper caution to travellers, of the existence of said railroad crossing; and took no proper precaution to warn travellers of the approach of said train, and to protect

them from harm and injury, as was their duty to do ; that the said train of cars was run across said highway at an unusual and dangerous speed, and to a point much further than usual or necessary, by reason of the carelessness and negligence of the defendants' servants; and that the defendants were guilty of great carelessness and negligence in the management of said railroad branch, and the trains run upon the same, in not giving notice and warning as aforesaid ; in the great and dangerous speed at which said train was run across said highway at a dangerous point; and in not guarding properly against collision with those who were crossing said railroad over said highway ; whereby the plaintiff was injured as aforesaid."

The answer admitted the defendant's incorporation, ownership of the railroad, running of trains thereon, and that their branch railroad crossed the highway, as alleged.　It also admitted that the plaintiff, on the day alleged, was travelling with her husband in a sleigh along said highway, and that the sleigh came in collision with the defendants' locomotive engine and train of cars, and the plaintiff, by reason of such collision, was thrown from the sleigh and severely injured and bruised, and her arms broken ; but alleged the defendants' ignorance, and left the plaintiff to prove, whether the collision happened on the highway, whether the engine and cars ran into and over the sleigh, and what damage, pain and loss the plaintiff sustained. It denied that the plaintiff was then and there travelling with due care and foresight, and alleged that the plaintiff was then and there guilty of negligence and carelessness in travelling, and that the accident happened and the damage was sustained by reason of such negligence and carelessness; denied that the engine and cars were drawn or moved at great speed, and alleged that they then and there moved at a moderate and reasonable speed; and denied that the defendants were guilty of any neglect or carelessness in the management of their train, or in the omission to give all reasonable, proper and legal notice of the approach and passing of the train across the highway, or of the existence of the railroad crossing, or in the omission of any other care or duty legally incumbent on them, whereby the

plaintiff had suffered the alleged injuries, in the management of the defendants' said railroad, or the condition or construction thereof.

At the trial at March term 1854, before *Bigelow*, J., it appeared that the plaintiff, at the time of the accident, which was late in the evening, was riding in a sleigh, with her husband and another person, a female; that the plaintiff sat on the front seat and was driving, and the others sat behind; that after the disaster the plaintiff and her husband were taken up, both severely injured, and carried into separate apartments of the railroad station, which was close by, where they remained until they were carried home; and that the husband died early the next morning in consequence of his injuries.

The defendants offered in evidence the declarations of the husband, concerning the cause and circumstances of the accident, made by him while in the station; but as they were not made in the presence or hearing of the plaintiff, they were rejected.

Much conflicting evidence concerning the character and disposition of the horse was introduced and submitted to the jury; and the plaintiff admitted that they were well known to her and her husband to have been such as they were proved to have been, inasmuch as her husband had owned the horse for two years before the accident. The defendants offered to show, that "some time prior to the accident certain statements, concerning the character of the horse which the plaintiff was driving at the time of the accident, were made by a witness to the plaintiff's husband." But it appearing that the plaintiff was not present when such statements were made, and there being no proof of their having been ever communicated to her, they were rejected.

The defendants offered in evidence a record of the proceedings of the county commissioners of Norfolk at September term 1846, by which, upon the petition of the defendants, concurred in by the selectmen of Needham, for leave to construct their branch railroad so as to cross said highway upon a level, without being required to erect any gate across their road at the crossing, or to exhibit any flag at the times of crossing, said

commissioners, after a view and hearing, declared their " opinion that no injury, danger or inconvenience would result to the travel on said public highway, by reason of the railroad crossing the same on a level therewith, provided no passenger or freight house of said railroad should be placed nearer than one hundred feet of said public road ; " and authorized the defendants so to cross, upon condition that they should not so place any such house ; and added, " the commissioners do not deem it necessary, for the present, to require said railroad corporation to erect any gate, or exhibit any flag, as additional security to travellers on said public highway." But, the plaintiff having expressly waived any claim upon the ground of a failure of the defendants to comply with the requisitions of the county commissioners, the judge rejected this evidence; and, upon this point, instructed the jury that the plaintiff was precluded from any claim for negligence of the defendants, on the ground that the requirements of the commissioners and the selectmen, made under the statutes, had not been complied with.

The plaintiff introduced and relied on much evidence tending to show that the defendants were guilty of negligence at the time and place of the accident, by omitting to ring the bell on the engine, and to sound the whistle ; by going at a very rapid speed ; by failing to apply the brakes to the engine and cars in season ; by neglecting to keep a proper lookout ahead for vehicles approaching on the highway ; and not having a flagman or person in attendance at the crossing to warn travellers on the highway of the approach of the engine ; that the crossing was peculiarly dangerous, owing to the sight being obstructed, as travellers on the highway approached, by the houses and buildings of the village, which rendered great precautions on the part of the defendants necessary, which were omitted ; and that in these and other particulars the defendants were guilty of negligence.   Much evidence was offered by the defendants to rebut and control this testimony, in all its particulars, and to show that great care was used at this crossing.   And the jury were taken to view the crossing in question during the trial.

Upon this state of proof, the counsel for the defendants re-

quested the following special instructions: " That the statute law having prescribed the ringing of the bell as the warning to travellers at highway crossings, and provided other specific provisions for their security if that should be insufficient in the opinion of public officers appointed to act upon that question, the ringing of the bell at this crossing was all that was required by law, unless there was something peculiar to it, which rendered another mode of notice necessary ; and that the burden is on the plaintiff to show such peculiarity, and that it was such as created a difficulty in hearing a bell at a reasonable distance.

" That the statute law having placed the power of providing certain and perfectly safe precautions, for the protection of travellers at crossings, in the hands of public servants elected by the people in the neighborhood of said crossings, to be constructed at the expense of the railroad corporations, provided that the ringing of the bell should not be considered sufficient by such public servants; and this road having been in operation at that time for six years ; and there being no proof that any complaint had been made that the ringing of the bell was not sufficient; and no requisitions having been made by the public servants for any further precautions; the legal presumption is, that no other precautions were necessary, and the burden of proof is on the plaintiff to prove that some other was ordinarily necessary.

" That the statute law having placed it in the power of public servants to determine upon the necessity of erecting gates at railroad crossings, and to dispense with the erection of them, and there being no proof that any such requisition had been made upon the defendants to erect a gate, the want of one, or of any substitute for one, cannot be accounted negligence.

" That, to render the defendants liable in the action, they must be proved guilty of negligence, or want of ordinary care or diligence, in the omission of proper precautions at this crossing— the want of such care and diligence as are usually exercised in like cases ; and therefore that, to find the defendants guilty of negligence in omitting to have a flagman stationed there, or in the omission of any other precaution, the jury must be satisfied that such precautions were ordinarily used at railroad crossings

like this; and that, unless it is satisfactorily proved that such precautions were ordinarily used under like circumstances at that time, the plaintiff is not entitled to recover."

But the court refused to give the instructions asked for, and instructed the jury as follows : " That the burden of proof was on the plaintiff to satisfy the jury, by the clear weight and full preponderance of the proof—the preponderance of probabilities merely not being sufficient—that the defendants had been guilty of negligence and want of ordinary care, (which were defined and illustrated in a manner to which no exception was taken ;) that this was a question of fact, to be determined by them upon the whole evidence in the case, including their own observation at the view; that if, from the difficulty of hearing the bell or seeing the train at a reasonable distance, or from other causes, as disclosed by the testimony, the defendants had been guilty of a want of due and reasonable care, by omitting such warnings and precautions as persons of ordinary care, under like circumstances, would and ought to use, and thereby caused damage to the plaintiff, she would be entitled to recover; that the plaintiff did not claim damages by reason of negligence in the defendants in not having a gate at this crossing, having expressly waived it ; but she did claim that the defendants were guilty of negligence, in omitting to have a flagman there to give notice of the approach of the train ; that on this point it was the duty of the plaintiff to satisfy the jury that this was a necessary, reasonable and proper precaution, in the exercise of ordinary care on their part, at the place, time and under the circumstances proved at the time of the accident; that the question for the jury to determine was not as to what other railroads had, or might, or ought to have done at different times, in other places, and under different circumstances; nor was the plaintiff bound to offer proof of usage by other railroads, although evidence of such usage might have been competent, as bearing on the issue ; but the question was, whether the defendants had been guilty of negligence at the time when the accident happened ; and this was to be determined on the whole evidence in the cause, bearing on this part of the case—the bur-